### *CHRETIEN* vs. *THEARD.*

Allegation that a slave was a thief, will authorise evidence, he was in the habit of stealing.

Stealing need not be accompanied with force to constitute a redhibitory defect.

Prescription is interrupted by an action in which the plaintiff is nonsuited.

APPEAL from the court of the third district.

PORTER, J. delivered the opinion of the court. This is a redhibitory action, in which the plaintiff seeks to return a slave he purchased from the defendant, and get back the price. The defect alleged is, that the slave is a thief, and addicted to robbery, and it is further charged that the vendor knew he had those vices, at the time he sold him.

An action founded on the same cause as the present one has been already before us. 11 *Martin*, 11. The plaintiff was there nonsuited, because he had not furnished proof that he brought suit within six months after he obtained the knowledge of the defect. The present record shews that he has fully removed this ob-

jection, and the evidence establishes very satisfactorily, that the slave was a thief at the time he was sold;—that he committed theft after he came into the possession of the plaintiff; and that the defendant well knew he was addicted to this vice, at the time he sold him.

Several grounds of defence have been presented in this court against the right of the petitioner to recover.

*First*: That the allegations in the petition do not correspond with the proof.

*Second*: That the vices complained of are not redhibitory.

*Third*: That the action is barred by prescription.

The first objection was supported by the counsel, for defendant, on the ground that the petition charged the slave with being addicted to *robbery*, and that the evidence went to prove he was in the habit of stealing. A recurrence to the petition shews that this exception is not well founded. It does not merely charge, that the slave was addicted to robbery. It avers also that he was a thief,—that he had a propensity to thieving, and it sets out a particular act of larceny. These allegations fully authorised the introduction of the evidence taken on the

trial, and even if they did not, the defendant could not claim the benefit of the variance in this court, when he suffered the proof to be received without objection, in that of the first instance.

The second point of the defendant is, that the vice complained of is not a redhibitory one, that the stealing must be accompanied with force to constitute this defect.

If this construction be the true one, it will lead to the most inconvenient results, and open the door to great and numerous frauds. This consideration we are aware is not of much importance, if the law be clear and free from ambiguity ; but if otherwise, it is entitled to much weight, in aiding our conclusions as to the purport and true meaning of the statute.

The words of the law in the French text, are *" si l'esclave est adonné au vol :"*—in the English " if he is addicted to robbery."

*Vol* is the generic term in the French language, for theft of every kind, and it is admitted embraces larceny. Robbery it is said means the offence known to our criminal law as such. And it is urged that the English version shews, that the word *vol* in the French, was used in the restricted sense of taking the property of another by force.

, Our code was passed previous to the enact-
ment of the constitution, and the legislature in
adopting it, directed that the French and En-
glish texts must be taken together; and that
they should mutually serve for the interpreta-
tion of each other. 2 *Mart. Dig.* 98.

Whenever therefore the expressions can be
reconciled, and made harmonize with each
other, it is the duty of those on whom the task
of construing them is devolved, to do so. When
they cannot, such a construction must be
adopted, as does violence to neither, and gives
effect to both.

Thus if the French part of the law, made
epilipsey alone a redhibitory defect, and the En-
glish had provided only for leprosy, we should
hold that both these diseases constituted vices
for which the sale could be annulled; because
both were provided for, and because at that
time, the legislative will, expressed in either lan-
guage became a law. In the case of *Touro vs.
Cushing*, decided at the last July term, this
principle was applied to the 122d article of the
code, 369. The text there presented two dis-
tinct ideas to the mind, and we thought a com-
pliance with either, sufficient on the part of
him who claimed the benefit of the law; other-

East'nDistrict. wise, as was there said, the statute in rela-
June, 1824. tion to that provision, would be a *decoy* instead

Chretien
*vs.*  of a *beacon*.
Thred.

And where they are not entirely different, as in the case before us, where the word in one text, includes the meaning used in the other, and means something more ; we must on the same principle, take that which presents the most enlarged sense, because in doing so we give *full* effect to both clauses.

The last point is that of prescription.

On this head the counsel for defendant, refered to several authors who have written on the French law. According to them, prescription, is not interrupted by a suit in which the plaintiffs demand is rejected ; nor where there is a voluntary abandonment of the action. *Pandecte francaises, rol.* 7, 581, 582. *Dunod traité de prescription* 92. *Denissart, vol.* 3, 740.

It is unnecessary for us to go into the question, how the law stands in that country, or to enquire how much of the doctrine on which the appellant relys, depends on provisions particular to the French jurisprudence. By that of Spain, greater facilities were afforded the creditor, to interrupt prescription. According

to the *3d partida, title* 29, *law* 29, a sim-
ple demand of the debtor, in the presence
of witnesses was sufficient. Why an action
in a court of justice, altho' not followed up to
final judgment, should not have as much effect
as a simple request which is not succeeded by
a suit, is not perceived by us. Admitting how-
ever that it has not. Another provision of the
law already cited declares, that prescription is
interrupted by a suit, and we find nothing in
that law which makes any exception, or which
goes to shew, that this interruption which is
declared to result from a demand in justice, loses
effect, because the action is not prosecuted to
final judgment. Prescription says this law, cea-
ses to run *from the time suit is brought.* Of this
opinion must have been the compilers of our
code, for in transcribing into it, the provisions
of the Napoleon, on the subject of prescription,
they omitted inserting the article 2247, which
declares, that if the plaintiff desist from his suit,
or if his demand be rejected, prescription will
not be interrupted.

On the merits we see no thing to doubt the
correctness of the judgment of the court of the
first instance, and we do therefore order, ad-

judge and decree that its judgment be affirmed with costs.

CHRETIEN
vs.
THEARD.

*Cuvillier* for the plaintiff, *Dennis* for the defendant.